No. 23-3396

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

AL OTRO LADO, INC., *et al.*,

*Plaintiffs-Appellants*,

v.

ALEJANDRO MAYORKAS, Secretary of Homeland Security, *et al.*,

*Defendants-Appellees*.

_____

APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA
No. 3:23-cv-01367

_____

## APPELLANTS' OPENING BRIEF

_____

Melissa Crow
CENTER FOR GENDER & REFUGEE STUDIES
1121 14th Street, N.W., Suite 200
Washington, DC 20005
(202) 355-4471

Neela Chakravartula
Dulce Rodas
CENTER FOR GENDER & REFUGEE STUDIES
200 McAllister Street
San Francisco, CA 94102
(415) 565-4877

Katherine Melloy Goettel
Gianna Borroto
Suchita Mathur
AMERICAN IMMIGRATION COUNCIL
1331 G St NW, Suite 200
Washington, DC 20005
(202) 507-7552

Baher Azmy
Angelo Guisado
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor

Stephen M. Medlock
Evan Miller
Rami Abdallah E. Rashmawi
Alex Rant
Nataly Farag
VINSON & ELKINS LLP
2200 Pennsylvania Ave., N.W.
Suite 500 West
Washington, DC 20037
(202) 639-6500

Ori Lev
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006
(202) 263-3270

Matthew H. Marmolejo
MAYER BROWN LLP
333 S. Grand Ave., 47th Floor
Los Angeles, CA 90071
(213) 229-9500

New York, NY 10012
(212) 614-6464

*Counsel for Appellants*

## CORPORATE DISCLOSURE STATEMENT

Plaintiffs are a putative class and two nonprofit entities with no parent corporation. No publicly held corporation owns ten percent or more of any stake or stock in Plaintiffs.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ iii

INTRODUCTION .................................................................................1

JURISDICTIONAL STATEMENT ......................................................5

ISSUE PRESENTED ...........................................................................5

STATEMENT OF THE CASE ..............................................................5

    A.   November 1, 2021: Defendants Adopt Binding Guidance That Was Not Based on 8 U.S.C. §§ 1221–1232. ...................................................................................5

    B.   January 2023: Defendants Roll Out CBP One for Asylum Inspection and Processing. .............................7

    C.   May 11, 2023: Defendants Memorialize the November 2021 Binding Guidance in the Federal Register. .....................8

    D.   CBP Officers Begin Violating Their Binding Guidance........10

    E.   Plaintiffs and the Proposed Class Members Face Insurmountable Challenges to Obtaining CBP One Appointments. ...................................................................13

    F.   Defendants' Deviation from the Binding Guidance Irreparably Harmed the Named Plaintiffs and Proposed Class Members. ...........................................14

    G.   Plaintiffs Moved for a Preliminary Injunction Based on the *Accardi* Doctrine to Require Defendants to Follow Their Own Binding Guidance. ....................................15

    H.   Defendants Continued to Violate Their Binding Guidance After Plaintiffs Filed This Lawsuit.........................16

    I.   The District Court Erroneously Denied Plaintiffs' Motion for Preliminary Injunction............................17

STANDARD OF REVIEW ..................................................................20

SUMMARY OF THE ARGUMENT....................................................20

ARGUMENT .......................................................................................22

i

**TABLE OF CONTENTS**
(continued)

Page

I. The District Court Erred by Misinterpreting 8 U.S.C. § 1252(f)(1). ...................................................................22

    A. The District Court's Statutory Interpretation is Inconsistent with *Aleman Gonzalez* and Binding Ninth Circuit Authority.......................................................23

    B. The District Court's Broad Standard Ignores the Plain Text, Structure, and History of 8 U.S.C. § 1252(f)(1)...........28

    C. The District Court's Misinterpretation of Section 1252(f)(1) to Encompass All Conduct Related to Immigration Enforcement Violates Multiple Canons of Statutory Construction....................................................35

    D. The District Court Erred by Finding a Clear Legislative Command Stripping Injunctive Relief Beyond the Scope of 8 U.S.C. § 1252(f)(1). ...............39

    E. The District Court Erred in Adopting an Overly Broad Definition of "Enjoin or Restrain."...........................42

II. The Court Should Reverse the District Court's Order and Direct the District Court to Provisionally Certify the Class and Enter the Preliminary Injunction. ...............................45

CONCLUSION ...................................................................49

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Otro Lado v. Mayorkas*,
  619 F. Supp. 3d 1029 (S.D. Cal. 2022) ....................................... passim
*Al Otro Lado, Inc. v. Mayorkas*,
  2022 WL 3142610 (S.D. Cal. 2022)....................................... 26, 27, 32
*Al Otro Lado, Inc. v. McAleenan*,
  423 F. Supp. 3d 848 (S.D. Cal. 2019) ................................................48
*Al Otro Lado, Inc. v. Wolf*,
  336 F.R.D. 494 (S.D. Cal. 2020) .............................................. 48, 49
*Alcaraz v. INS*,
  384 F.3d 1150 (9th Cir. 2004) .................................................. 32, 38
*Ammex, Inc. v. McDowell*,
  24 F.4th 1072 (6th Cir. 2022) ............................................................31
*Aracely, R. v. Nielsen*,
  319 F. Supp. 3d 110 (D.D.C. 2018) ................................................48
*Ariz. All. for Cmty. Health Ctrs. v. Ariz. Health Care Cost Containment Sys.*,
  47 F.4th 992 (9th Cir. 2022) .............................................................37
*Ariz. Dream Act Coal. v. Brewer*,
  757 F.3d 1053 (9th Cir. 2014) ..........................................................47
*Arizona v. United States*,
  567 U.S. 387 (2012) .........................................................................30
*Battle v. FAA*,
  393 F.3d 1330 (D.C. Cir. 2005)........................................................38
*Belgau v. Inslee*,
  975 F.3d 940 (9th Cir. 2020) ............................................................46
*Biden v. Nebraska*,
  143 S. Ct. 2355 (2023)......................................................................36
*Biden v. Texas*,
  142 S. Ct. 2528 (2022)......................................................................34
*Bostock v. Clayton County*,
  140 S. Ct. 1731 (2020)......................................................................50
*Brown v. Swann*,
  35 U.S. 497 (1836) ...........................................................................40
*Califano v. Yamasaki*,
  442 U.S. 682 (1979) .........................................................................40

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Catholic Soc. Servs., Inc. v. INS*,
   232 F.3d 1139 (9th Cir. 2000) ....................................................... 24, 30

*Church of Scientology v. United States*,
   920 F.2d 1481 (9th Cir. 1990) ....................................................... 27, 33

*Ctr. for Cmty. Action & Env't Just. v. Fed. Aviation Admin.*,
   61 F.4th 633 (9th Cir. 2023) ................................................................42

*Doe v. Wolf*,
   432 F. Supp. 3d 1200 (S.D. Cal. 2020) ..............................................47

*Drakes Bay Oyster Co. v. Jewell*,
   747 F.3d 1073 (9th Cir. 2014) ............................................................48

*E. Bay Sanctuary Covenant v. Biden*,
   2023 WL 4729278 (N.D. Cal. 2023) ........................................... 14, 32

*E. Bay Sanctuary Covenant v. Trump*,
   932 F.3d 742 (9th Cir. 2018) ..............................................................48

*Flores v. Garland*,
   3 F.4th 1145 (9th Cir. 2021) .................................................................7

*Florida v. United States*,
   2022 WL 2431414 (N.D. Fla. 2022) ..................................................30

*FTC v. Dean Foods Co.*,
   384 U.S. 597 (1966) ...........................................................................40

*Garland v. Aleman Gonzalez*,
   596 U.S. 543 (2022) ................................................................... passim

*Gonzales v. DHS*,
   508 F.3d 1227 (9th Cir. 2007) ................................................ 26, 28, 31

*Gonzalez v. ICE*,
   975 F.3d 788 (9th Cir. 2020) ................................................ 2, 23, 24, 26

*Gonzalez v. Sessions*,
   325 F.R.D. 616 (N.D. Cal. 2018) .......................................................19

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................49

*Hernandez-Cruz v. Holder*,
   651 F.3d 1094 (9th Cir. 2011) ............................................................41

*Huisha-Huisha v. Mayorkas*,
   27 F.4th 718 (D.C. Cir. 2022) ..............................................................7

iv

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Huisha-Huisha v. Mayorkas,*
  560 F. Supp. 3d 146 (D.D.C. 2021), *aff'd and remanded*, 27 F.4th 718
  (D.C. Cir. 2022)................................................................................48

*Immigrant Defenders Law Ctr. v. Mayorkas,*
  2023 WL 3149243 (C.D. Cal. 2023) ................................................24

*Independence Min. Co. v. Babbitt,*
  105 F.3d 502 (9th Cir. 1997) ...........................................................42

*Jennings v. Rodriguez,*
  138 S. Ct. 830 (2018).......................................................................29

*Karnoski v. Trump,*
  926 F.3d 1180 (9th Cir. 2019) .........................................................20

*Kisor v. Wilkie,*
  189 S. Ct. 2400 (2019)...............................................................3, 41

*Longview Fibre Co. v. Rasmussen,*
  980 F.3d 1307 (9th Cir. 1992) .........................................................38

*Lowe v. SEC,*
  472 U.S. 181 (1985) .........................................................................37

*Marx v. Gen. Revenue Corp.,*
  568 U.S. 371 (2013) .........................................................................38

*Mitchell v. Robert DeMario Jewelry, Inc.,*
  361 U.S. 288 (1960) .........................................................................40

*Morton v. Ruiz,*
  415 U.S. 199 (1974) .........................................................................33

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins.*
  *Co.,*
  463 U.S. 29 (1983) ...........................................................................41

*Nat. Res. Def. Council v. U.S. Env't Prot. Agency,*
  31 F.4th 1203 (9th Cir. 2022)...........................................................42

*Nat. Res. Def. Council v. U.S. EPA (NRDC 2017),*
  857 F.3d 1030 (9th Cir. 2017)..........................................................41

*Niz-Chavez v. Garland,*
  141 S. Ct. 1474 (2021)......................................................................50

*Nken v. Holder,*
  556 U.S. 418 (2009) .........................................................................33

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Porter v. Warner Holding Co.*,
 328 U.S. 395 (1946) .........................................................................39
*Reno v. Am.-Arab Anti-Discrimination Comm.*,
 525 U.S. 471 (1999) .........................................................................29
*Rodriguez v. Hayes*,
 591 F.3d 1105 (9th Cir. 2010).........................................................49
*Rodriguez v. Sony Computer Ent. Am., LLC*,
 801 F.3d 1045 (9th Cir. 2015).........................................................29
*Roschen v. Ward*,
 279 U.S. 337 (1929) .........................................................................36
*Ross v. Blake*,
 578 U.S. 632 (2016) .........................................................................28
*Safe Air for Everyone v. EPA*,
 488 F.3d 1088 (9th Cir. 2007)....................................................3, 31
*Silvers v. Sony Pictures Ent., Inc.*,
 402 F.3d 881 (9th Cir. 2005).........................................................37
*The Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*,
 353 F.3d 1051 (9th Cir. 2003).........................................................29
*United States ex rel. Accardi v. Shaughnessy*,
 347 U.S. 260 (1954) ................................................................ passim
*United States v. Coca-Cola Bottling Co. of Los Angeles*,
 575 F.2d 222 (9th Cir. 1978).........................................................39
*United States v. Howell*,
 78 U.S. 432 (1870) .........................................................................36
*United States v. Neal*,
 776 F.3d 645 (9th Cir. 2015).........................................................37
*United States v. Roper*,
 72 F.4th 1097 (9th Cir. 2023).........................................................20
*Weinberger v. Romero-Barcelo*,
 456 U.S. 305 (1982) ................................................................. 39, 42
*Wisc. Cent. Ltd. v. United States*,
 138 S. Ct. 2067 (2018).....................................................................41
*Wooden v. United States*,
 595 U.S. 360 (2022) .........................................................................35

vi

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**Statutes**

5 U.S.C. § 706(1) ................................................................................18

6 U.S.C. § 111 .............................................................................. 29, 30

6 U.S.C. § 211(c) ......................................................................... 29, 30

6 U.S.C. § 211(g)(3) .................................................................... 29, 30

8 U.S.C. § 1158 ..................................................................................24

8 U.S.C. § 1158(a) ............................................................................30

8 U.S.C. § 1225 ........................................................................... 20, 24

8 U.S.C. § 1225(a)(1) ........................................................................24

8 U.S.C. § 1225(b)(1)(A)(i) ..............................................................32

8 U.S.C. § 1225(b)(1)(A)(ii) .............................................................32

8 U.S.C. § 1225(b)(1)(B) ..................................................................32

8 U.S.C. § 1231(a)(5) ........................................................................23

8 U.S.C. § 1231(a)(6) .................................................................. 19, 43

8 U.S.C. § 1252 ........................................................................... 32, 33

8 U.S.C. § 1252(e)(1) ........................................................................32

8 U.S.C. § 1252(e)(3) ........................................................................33

8 U.S.C. § 1252(f)(1) ................................................................. passim

8 U.S.C. § 1255(a) ............................................................................23

8 U.S.C. § 1255(i) .............................................................................23

8 U.S.C. §§ 1221-1232 .............................................................. passim

28 U.S.C. § 1292(a)(1) .........................................................................5

28 U.S.C. § 1331 ..................................................................................5

28 U.S.C. § 1341 ................................................................................39

28 U.S.C. § 1350 ................................................................................15

28 U.S.C. § 2283 ................................................................................39

42 U.S.C. § 265 ....................................................................................7

Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546, 3009 (1996) .............................32

**Regulations**

8 C.F.R. § 100.4 ...................................................................................6

8 C.F.R. § 208.33(a)(1) .......................................................................8

8 C.F.R. § 1208.33(a)(1) .....................................................................8

**Other Authorities**

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

86 Fed. Reg. 8267 (Feb. 5, 2021) .............................................................6

88 Fed. Reg. 31,314 (May 16, 2023) .......................................................8

Exec. Order 14010, 86 Fed. Reg. 8267, 8267 (Feb. 2, 2021).................................30

U.S. Const., art. I, § 8, cl. 4......................................................................29

**INTRODUCTION**

Defendants adopted a policy and then did not follow it. Defendants adopted binding internal guidance dictating that they would not turn back asylum seekers arriving at ports of entry ("POEs") who did not have appointments through the "CBP One" smartphone application. Despite that clear policy, that is exactly what Defendants have done at POEs across the U.S.-Mexico border by turning back asylum seekers arriving at POEs who did not have CBP One appointments. Defendants' failure to follow their own agency policy has irreparably harmed the proposed class members in this case.

*United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954), provides an important remedy empowering the District Court to enter an order requiring Defendants to comply with their own policy. There was no impediment to the District Court entering a classwide preliminary injunction under *Accardi*. While 8 U.S.C. § 1252(f)(1) prohibits district courts from entering classwide injunctions that require the government to take or refrain from taking actions to enforce, implement, or otherwise carry out the provisions of 8 U.S.C. §§ 1221–1232, *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022), Plaintiffs are not seeking such an injunction. Instead, they seek a preliminary injunction to require Defendants to follow a voluntarily adopted agency policy that does not even mention those statutory provisions.

1

Based on an erroneous reading of 8 U.S.C. § 1252(f)(1), the District Court denied Plaintiffs' motion for a classwide preliminary injunction. That determination was based on multiple outcome-determinative legal errors.

*First*, the District Court misinterpreted *Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022), and recent district court cases applying *Aleman Gonzalez*. By its own terms, *Aleman Gonzalez* states that it does not apply to "a situation in which . . . some statute not specified in § 1252(f)(1), might require injunctive relief against the enforcement of one of the covered immigration provisions" in § 1252(f)(1). 596 U.S. at 553 n.4 (finding such a proposition "unresponsive" to the question in *Aleman Gonzalez*). Relying on a chain of mandatory precedent not overturned by *Aleman Gonzalez*, courts have routinely held that courts may enjoin the enforcement of an agency action that has no grounding in § 1252(f)(1) even if doing so has "some collateral effect" on a statutory provision covered by § 1252(f)(1). *Id.*; *Gonzalez v. ICE*, 975 F.3d 788, 812 (9th Cir. 2020). That is all Plaintiffs seek here. They are seeking an injunction requiring Defendants to follow binding guidance that does not even mention the Immigration and Nationality Act ("INA"), much less a provision of the INA covered by § 1252(f)(1). 2-ER-254–59.

*Second*, the District Court ignored the plain language, structure, and history of § 1252(f)(1), which strips district courts and courts of appeal of their ability to

2

enter classwide injunctions enjoining or restraining the operation of specific statutory provisions that were not the basis of the requested injunction. Instead, the District Court read the limiting phrase, "of the provisions of part IV of this subchapter," out of § 1252(f)(1). In doing so, the District Court incorrectly transformed a narrow legislative compromise into a virtually limitless prohibition on any classwide injunction against nearly any immigration policy. That error was particularly significant here because the challenged agency pronouncement says nothing about the INA at all. 2-ER-254–59; *infra* 29–31. Such agency pronouncements should be taken at face value. *Safe Air for Everyone v. EPA*, 488 F.3d 1088, 1097 (9th Cir. 2007). Defendants' attempt to re-write the challenged memorandum as though it referenced the INA should be rejected. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2417 (2019) ("[A] court should decline to defer to a merely convenient litigating position or *post hoc* rationalization advanced to defend past agency action against attack.") (internal quotations omitted).

*Third*, not only do multiple principles of statutory construction show that Plaintiffs' view of § 1252(f)(1) is correct, the District Court's broad interpretation of § 1252(f)(1) conflicts with several additional canons of statutory construction. Specifically, the District Court's interpretation of § 1252(f)(1) would impermissibly render portions of the statute surplusage, violate the principle of *expressio unius est*

3

*exclusio alterius*, and give the executive branch nearly unchecked license to ignore its own policies—a result that defies common sense.

*Fourth*, the District Court did not consider the well-established rule that Congress can strip a court of its traditional equitable powers only if it does so clearly and explicitly. If Congress wanted to strip district courts and courts of appeal of their inherent power to enter injunctions with respect to any immigration policy, it must have said so clearly. Since Congress did not do so, § 1252(f)(1) must be read to limit the power of district courts and courts of appeal to enter classwide injunctions only when the requested injunction explicitly enjoins or restrains the operation of 8 U.S.C. §§ 1221–1232.

*Fifth*, § 1252(f)(1) does not prevent district courts from issuing injunctions that would not impede the government from operating or implementing the statute as it deems appropriate, as explained in *Aleman Gonzalez*. The classwide preliminary injunction Plaintiffs seek would only require the government to take an action that it had already voluntarily committed to taking. Therefore, 8 U.S.C. § 1252(f)(1) did not strip the District Court of its ability to enter the requested classwide preliminary injunction.

Consequently, this Court should reverse the District Court's order denying Plaintiffs' motions for preliminary injunction and provisional class certification. Because Plaintiffs established all of the other prerequisites for a classwide preliminary

injunction, this Court may either remand the matter to the District Court with instructions to enter a provisional class certification order and a classwide preliminary injunction, or it may direct the District Court to consider the preliminary injunction and class certification elements in the first instance.

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1292(a)(1).

## ISSUE PRESENTED

Does 8 U.S.C. § 1252(f)(1) bar classwide injunctive relief that would require the government to comply with its own policy against turning away noncitizens without CBP One appointments at POEs where (i) the government's policy does not reference any covered provision for its authority, (ii) the policy does not meaningfully implicate the operation of those provisions, and (iii) the government has taken the position that the policy reflects the lawful implementation of the covered provisions?

## STATEMENT OF THE CASE

### A.  November 1, 2021: Defendants Adopt Binding Guidance That Was Not Based on 8 U.S.C. §§ 1221–1232.

On November 1, 2021, the Acting Commissioner of U.S. Customs and Border Protection ("CBP") issued a memorandum to all CBP officers entitled "Guidance for Management and Processing of Undocumented Noncitizens at Southwest Border

Land Ports of Entry." 2-ER-254–59 (hereinafter, the "November 2021 memorandum"). That memo contained clear and binding guidance to CBP officers working at Class A POEs on the U.S.-Mexico border.[1] 2-ER-258. "In all cases, . . . undocumented noncitizens who are encountered at the border line should be permitted to wait in line, if they choose, and proceed into the POE for processing as operational capacity permits." *Id.* The memorandum was clear that "officers . . . may not instruct travelers that they must return to the POE at a later time or travel to a different POE for processing." *Id.* The memorandum also stated, "[i]mportantly, however, asylum seekers or others seeking humanitarian protection cannot be required to submit advance information in order to be processed at a Southwest Border land POE." *Id.*

The November 2021 memorandum did not cite or mention any provision of the Immigration and Nationality Act. Instead, it only referenced Executive Order 14010. *See* 2-ER-259. That Executive Order makes a broad reference to "the Constitution and the laws of the United States of America, including the Immigration and Nationality Act," 86 Fed. Reg. 8267, 8267 (Feb. 5, 2021), but it does not reference any portion of the INA with specificity. *See id.* Rather, the Executive Order discusses the executive's policy choices about how it would manage migration

---

[1] POEs are designated Class A, Class B, and Class C. 8 C.F.R. § 100.4. Class A POEs are required to accept all noncitizens. *Id.* Class B POEs can accept a more limited set of noncitizens. *Id.* Class C POEs process crewmen on certain vessels. *Id.*

throughout the Americas and shape domestic immigration policy, without reference to 8 U.S.C. §§ 1221–1232. *See id.*

On November 2, 2021, Defendants distributed the November 2021 memorandum to each of the field offices that oversee POEs on the U.S.-Mexico border. 2-ER-105. Following the distribution of the November 2021 memorandum, CBP's Office of Field Operations ("OFO"), the agency responsible for adopting border-wide policies for POEs, 2-ER-104–05, issued internal operational guidance instructing CBP officers at POEs not to turn back, redirect, or prevent any noncitizen from approaching a POE, consistent with the November 2021 memorandum, 2-ER-105–06.

## B. January 2023: Defendants Roll Out CBP One for Asylum Inspection and Processing.

From March 2020 to May 11, 2023, the government exercised purported authority under 42 U.S.C. § 265—a long dormant portion of the United States Code—to immediately expel or turn back nearly all arriving noncitizens at POEs to Mexico. *See, e.g.*, *Flores v. Garland*, 3 F.4th 1145, 1148 (9th Cir. 2021) (describing agency rulemaking); *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 723–27 (D.C. Cir. 2022) (describing historical development of 42 U.S.C. § 265 and regulations adopted by government beginning in March 2020). Despite the general closure of POEs during this time, CBP did process some particularly vulnerable noncitizens at POEs through

7

humanitarian exceptions. 3-ER-535–36. In January 2023, CBP began requiring individuals seeking one of those exceptions to use the CBP One app to make an appointment at a POE. 3-ER-536.

### C. May 11, 2023: Defendants Memorialize the November 2021 Binding Guidance in the Federal Register.

Then, on May 11, 2023, Defendants promulgated a new rule entitled Circumvention of Lawful Pathways, which went into effect immediately and purported to set forth the government's policies concerning processing undocumented noncitizens at POEs. *See* 88 Fed. Reg. 31,314 (May 16, 2023), codified at 8 C.F.R. §§ 208.33(a)(1), 1208.33(a)(1). The rule creates incentives for noncitizens to use the CBP One app to make appointments for asylum processing, but does not require a CBP One appointment. To the contrary, the rule memorialized the November 2021 memorandum in the *Federal Register*, noting that "the CBP One app is not a prerequisite to approach a POE," and that "[i]ndividuals without appointments will not be turned away." 88 Fed. Reg. at 31,358. Indeed, the preamble to the rule repeatedly states that CBP officers will not prevent arriving noncitizens who present themselves at a POE from accessing the asylum system simply because they lack a CBP One appointment. *See* 88 Fed. Reg. at 31,358, 31,365, 31,392, 31,396, 31,399, 31,401 n.240.

On the same day, Casey Durst, the Executive Director of Operations at OFO, and Matthew S. Davies, the Executive Director of Admissibility and Passenger Programs at OFO, issued an internal memorandum to all POEs entitled "Post-Title 42 Port Operations." 2-ER-119–20. This memorandum is "national-level policy and guidance" that "is binding on" all CBP officers working at POEs. 2-ER-104. The May 11, 2023 memorandum explains that effective May 12, 2023, the Title 42 regulations allowing CBP officers to expel arriving noncitizens on the basis of a purported public health emergency would expire. 2-ER-119. The memorandum is clear that "noncitizens who lack documents sufficient for admission are strongly encouraged, but not required, to use the CBP One™ mobile application to schedule an appointment to present at a POE." *Id.* The memorandum further clarifies that the November 2021 memorandum still applies, and CBP officers working at POEs should not "turn back, redirect, or prevent any noncitizen without appropriate documents sufficient for admission from applying for entry at any POE[.]" *Id.*

That same day, Defendants provided a written muster—i.e., an order to CBP officers reporting for duty—entitled "Post-Title 42 Port Operations." 2-ER-121–26. The muster expressly states that arriving noncitizens are "not required" to pre-register for an appointment using CBP One. 2-ER-121. The muster also states: "CBP officers will not turn back, redirect, or prevent the entry of any noncitizen without documents for admission at any POE." *Id.*

9

Defendants disseminated the memorandum and muster to POE leadership and CBP officers who were likely to come into contact with arriving noncitizens. For example, on May 11, 2023, the San Diego Operations Center in OFO's San Diego Field Office sent the May 11, 2023 memorandum and muster to all port directors and assistant port directors of POEs in the San Diego Field Office. 2-ER-151–53. At the Otay Mesa, California POE, Defendants identified 24 CBP officers who were trained to inspect and process arriving noncitizens. 2-ER-148. Defendants instructed those officers not to tell arriving noncitizens that the Otay Mesa POE "will not process them." *Id.* At the San Ysidro, California POE, Assistant Port Director Katrina Deyo repeatedly told CBP officers that "[n]oncitizens without documents sufficient for entry to the United States should be advised that they may wait to be processed." 2-ER-138–42.

### D. CBP Officers Begin Violating Their Binding Guidance.

CBP officers standing on U.S. soil at the border line between the U.S. and Mexico at Class A POEs failed to comply with CBP's binding guidance. Instead, they turned back arriving noncitizens who did not have CBP One appointments. When each of the proposed class representatives approached a POE and told a CBP officer that they could not use the CBP One app, CBP officers told them to go back to Mexico and register for an appointment using the CBP One app. *See, e.g.*, 2-ER-278–79, 2-ER-286–87, 2-ER-297–98, 2-ER-310, 2-ER-319–20, 3-ER-341, 3-ER-

350, 3-ER-358–59. In the vast majority of these interactions, the CBP officers did not inform the class representatives that they could wait to be inspected without using the CBP One app. *See* 3-ER-350, 3-ER-358–59. When class representative Luisa Doe[2] asked for the opportunity to seek asylum, a CBP officer told her, "Don't you understand that's only possible through CBP One?" before turning her back to Mexico. 2-ER-286. When class representative Pablo Doe told a CBP officer that he was having trouble using the CBP One app, the CBP officer responded that those difficulties were not their problem and that Pablo Doe "should learn English," before turning him back to Mexico. 3-ER-350.

Plaintiff Al Otro Lado's staff observed CBP officers turning back arriving noncitizens without CBP One appointments and recorded those interactions. *See, e.g.*, 3-ER-374–77; 2-ER-203–07; 2-ER-37–41.[3] Employees of humanitarian organizations working at the border have similarly observed CBP officers at POEs turning away arriving noncitizens in violation of Defendants' binding guidance. *See, e.g.*, 3-ER-401–02; 3-ER-487; 3-ER-445; 3-ER-619–622. CBP officers are turning back arriving noncitizens who do not have CBP One appointments at POEs across the

---

[2] The District Court granted Plaintiffs' motion for class representatives to proceed pseudonymously. *See* 4-ER-676–98; 1-ER-7–8.

[3] Plaintiffs lodged copies of these audio recordings with the District Court and will lodge copies of the same recordings with this Court.

U.S.-Mexico border. *See, e.g.*, 3-ER-538–41 (showing that CBP inspects only asylum seekers who use the CBP One app at multiple POEs). Further, a May 2023 report from the University of Texas' Strauss Center for International Security and Law explains that at the Eagle Pass, El Paso, and Calexico POEs, CBP officers only allowed arriving noncitizens with CBP One appointments to present at the border and turned back all other arriving noncitizens. 2-ER-168–73.

Defendants do not seriously contest this evidence. Rather than providing declarations from the CBP officers who actually processed the class representatives or providing their own recordings of those interactions, Defendants provided three declarations from mid-level managers who had no first-hand interactions with the class representatives. *See* 2-ER-102–60.

One director in OFO's headquarters division—i.e., an OFO employee who does not work at a POE or in the field generally—testified that she was generally aware of complaints that CBP officers turned back arriving noncitizens. 2-ER-110–11. Notably, the information contained in this declaration does not actually dispute that CBP officers turned back some arriving noncitizens who did not have CBP One appointments. *Id.* Most importantly, the second-hand information in the declaration provided by the headquarters official does not dispute the first-hand accounts of the class representatives. *Id.*

### E. Plaintiffs and the Proposed Class Members Face Insurmountable Challenges to Obtaining CBP One Appointments.

In violation of the binding guidance, Defendants turned back the named Plaintiffs because they lacked CBP appointments which, in many cases, are impossible to obtain. Each of the named Plaintiffs experienced technical, linguistic, or other obstacles using the CBP One app. *See, e.g.*, 2-ER-319–20; 2-ER-328–29; 3-ER-341; 3-ER-350; 3-ER-420. Many noncitizens have experienced similar problems using the CBP One app. *See, e.g.*, 3-ER-397–98 (detailing reports of the "app crash[ing] frequently" and confusing error messages); 3-ER-444 (describing the "inexplicable error messages" noncitizens received in their non-native language preventing them from obtaining appointments on the app). As the co-director of one nongovernmental organization that assists noncitizens at the U.S.-Mexico border explained, "I have personally witnessed dozens of migrants attempting to complete the lengthy CBP One registration and/or appointment process for themselves and their families, only to have the app drop connection with their phone and crash." 3-ER-464. CBP provides no technical support to noncitizens seeking to navigate their use of the CBP One app. 2-ER-309–10; 3-ER-490.

While Defendants claim that they are attempting to improve the CBP One app, 2-ER-159–60, technical fixes cannot remedy the intrinsic inaccessibility of a smartphone application for many asylum seekers. Many proposed class members do not speak one of the three languages supported by the CBP One app, have had their

phones stolen while in Mexico, lack a sufficiently updated smartphone, or are simply unable to navigate a complicated app due to age, lack of technological knowledge, or disability. *See* 2-ER-260–72.

Accordingly, noncitizens without CBP One appointments continue to approach CBP officers along the U.S.-Mexico border in order to seek asylum at POEs.

### F. Defendants' Deviation from the Binding Guidance Irreparably Harmed the Named Plaintiffs and Proposed Class Members.

Noncitizens suffered significant harm as a direct result of CBP officers violating Defendants' binding guidance and turning them back because they lacked CBP One appointments. Asylum seekers, including Mexican noncitizens seeking to flee Mexico itself, are forced to wait in Mexican border towns after being turned back and suffer a "heightened risk of violence by both state and non-state actors." *E. Bay Sanctuary Covenant v. Biden*, 2023 WL 4729278, at *15 (N.D. Cal. 2023). Indeed, the U.S. State Department warns that U.S. citizens should not travel to many of those regions. *See* 3-ER-425–40. Noncitizens in these Mexican border towns are deprived of access to safe shelters, viable employment prospects to support themselves and their families, and reliable sources of food, water, and medical treatment, while they repeatedly attempt to secure CBP One appointments. *See, e.g.*, 3-ER-404–09; 3-ER-445–46; 3-ER-486–90. These perilous conditions result in significant physical and psychological harm to waiting noncitizens. *See, e.g.*¸ 3-ER-504–06. Some noncitizens have died while attempting to secure CBP One appointments. *See,*

*e.g.*, 3-ER-400–01, 408–09; 3-ER-489–92; 3-ER-514. Noncitizens waiting to receive CBP One appointments report that they have been raped, kidnapped, robbed, and extorted. *See, e.g.*, 3-ER-351; 3-ER-409–10; 3-ER-466–67.

Moreover, because of Defendants' failure to follow their own binding guidance, noncitizens are stranded in a handful of locations where they can be tracked down and targeted by the same persecutors they are fleeing. *See, e.g.*, 2-ER-276–78 (class representative fears that abusive spouse will find her); 2-ER-318–19 (class representative fears that cartel will locate her and persecute her family again); 2-ER-327–28, 330 (class representative received threatening messages from her persecutors while stuck in Tijuana). In some cases, Mexican noncitizens are fleeing persecution from Mexican authorities or Mexican organized crime in the very border towns where they are seeking asylum and are ultimately turned back by CBP. 2-ER-308–10.

## G. Plaintiffs Moved for a Preliminary Injunction Based on the *Accardi* Doctrine to Require Defendants to Follow Their Own Binding Guidance.

Ten noncitizens (the "class representatives")[4] and two nongovernmental organizations that serve noncitizens at the U.S.-Mexico border sued Defendants. 4-ER-703–74. Plaintiffs sought injunctive and declaratory relief under the *Accardi*

---

[4] One of the class representatives filed a notice of voluntary dismissal before Plaintiffs filed their motions for preliminary injunction and provisional class certification, 4-ER-699–702, leaving nine class representatives.

15

doctrine, for violation of the Due Process Clause of the Fifth Amendment, and for violations of the Alien Tort Statute, 28 U.S.C. § 1350. 4-ER-763–73. In addition, Plaintiffs sought vacatur, injunctive relief, and declaratory relief under Sections 706(2) and 706(1) of the Administrative Procedure Act. *Id.*

Shortly after filing their complaint, the class representatives moved to provisionally certify a class consisting of

> all noncitizens who seek or will seek to present themselves at a Class A Port of Entry on the U.S.-Mexico border . . . to seek asylum, and were or will be prevented from accessing the U.S. asylum process by or at the direction of Defendants on or after May 12, 2023.

4-ER-640; *see also* 4-ER-626–31. Simultaneously, the class representatives moved for a preliminary injunction based solely on their *Accardi* doctrine claim. 2-ER-208–47. Specifically, the class representatives sought a preliminary injunction "to enjoin Defendants' failure to follow their [b]inding [g]uidance." 2-ER-208.[5]

## H. Defendants Continued to Violate Their Binding Guidance After Plaintiffs Filed This Lawsuit.

Shortly after Plaintiffs filed their complaint and motions for preliminary injunction and provisional class certification, Defendants began providing the class

---

[5] The class representatives decided not to move for a preliminary injunction on any of their other claims. Those causes of action are currently the subject of motion to dismiss briefing before the District Court.

representatives with appointments to present themselves for inspection and processing at POEs. *See* 2-ER-179; 2-ER-186; 2-ER-194; 2-ER-200. However, when the named Plaintiffs arrived at the designated POE at the time of their appointments, they were repeatedly turned away and referred to other POE entrances, forcing them to walk several kilometers back and forth for three to four hours in order to be processed as the parties had previously agreed. *See* 2-ER-179; 2-ER-187–90. This conduct violated Defendants' binding internal guidance concerning redirecting arriving noncitizens. *See supra* Section C. Significantly, Defendants have never denied that these repeated turn-backs and redirections occurred.

## I. The District Court Erroneously Denied Plaintiffs' Motion for Preliminary Injunction.

However, the District Court found that 8 U.S.C. § 1252(f)(1) prohibited it from entering an injunction that "forces defendants to follow binding guidance and inspect and process asylum seekers regardless of whether they have a CBP One appointment." 1-ER-10. It reasoned that it did not matter that Plaintiffs were seeking a preliminary injunction to "force [D]efendant[s'] compliance with their own policy [that] is separate from the INA provisions." 1-ER-11–12. It held that a classwide injunction that "restrict[ed] [CBP] from turning back asylum applicants *for whatever reason*" would "directly implicate how CBP implements its duty to inspect asylum seekers under § 1225 and the procedures set out therein." 1-ER-12 (emphasis added). The District Court reached this conclusion because it believed that "the Supreme

17

Court" in *Aleman Gonzalez* "didn't seem to be concerned with where the right that was being asserted came from," even if it came from "an internal policy" that did not mention 8 U.S.C. §§ 1221–1232. 1-ER-30. The District Court held that "it doesn't seem to make any difference [] whether this is an *Accardi* claim enforcing an internal policy . . . or anything else," "that doesn't matter," because "the remedy-stripping . . . language [of § 1252(f)(1)] *had nothing to do with where the asserted right came from*." *Id.* (emphasis added). Under the District Court's logic, an injunction that has anything to do with the asylum process for whatever reason is barred by § 1252(f)(1) regardless of whether the injunction is based on, or seeks to implement or enforce, any provision of 8 U.S.C. §§ 1221–1232 and regardless of whether the injunction actually interferes with the government's policies concerning inspection and processing of noncitizens.

But the District Court failed to acknowledge that this nearly boundless interpretation of 8 U.S.C. § 1252(f)(1) went far further than the majority opinion in *Aleman Gonzalez* and the text of the statute. *See Aleman Gonzalez*, 596 U.S. at 571–72 (Sotomayor, J., concurring in part, dissenting in part) (noting that *Aleman Gonzalez* "is not without limits" and should not be read as "leav[ing] many noncitizens with no practical remedy whatsoever against clear violations by the Executive Branch.").

The District Court misinterpreted the phrase "the provisions of part IV of this sub-chapter" to mean any immigration policy, regardless of whether it specifically implements a statutory provision included in part IV (8 U.S.C. §§ 1221–1232).

Curiously, the District Court found that this case was on all fours with *Al Otro Lado, Inc.*, 619 F. Supp. 3d 1029 (S.D. Cal. 2022). Although that case applied 8 U.S.C. § 1252(f)(1) and *Aleman Gonzalez* to situations in which "immigration enforcement agencies are bound to implement their ministerial duties *prescribed by Congress*" under Section 706(1) of the Administrative Procedure Act ("APA"), *Al Otro Lado*, 619 F. Supp. 3d at 1033 (emphasis added), the District Court here found that there was no "daylight" between the *Accardi* claim in this case and the APA § 706(1) claim at issue in *Al Otro Lado*, and that any distinction between the claims was "immaterial," 619 F. Supp. 3d at 1033. 1-ER-28–29.

Finally, the District Court found that *Aleman Gonzalez* required a denial of the requested injunction, but failed to note key differences that warrant a different outcome in the present case. 1-ER-29–30. For example, the plaintiffs in *Aleman Gonzalez* sought a classwide injunction prohibiting the government from detaining individuals pursuant to 8 U.S.C. § 1231(a)(6)—a covered provision in part IV—for longer than 180 days without an individualized bond hearing. *Gonzalez v. Sessions*, 325 F.R.D. 616, 619 (N.D. Cal. 2018); *Aleman Gonzalez*, 596 U.S. at 548. But here,

the District Court ignored the fact that the classwide injunction Plaintiffs were seeking did not require Defendants to do *anything* pursuant to 8 U.S.C. §§ 1221–1232. Instead, Plaintiffs sought classwide relief under the *Accardi* doctrine to require Defendants to follow their own binding guidance that was not issued pursuant to any provision in 8 U.S.C. §§ 1221–1232.

Plaintiffs filed this appeal to rectify those errors.

## STANDARD OF REVIEW

This Court "review[s] an order regarding preliminary injunctive relief for abuse of direction, but review[s] any underlying issues of law de novo." *Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019). "Statutory interpretation is a question of law" that is reviewed de novo. *United States v. Roper*, 72 F.4th 1097, 1100 (9th Cir. 2023).

## SUMMARY OF THE ARGUMENT

The District Court's interpretation of 8 U.S.C. § 1252(f)(1) was overbroad and erroneous. It should be reversed for several reasons.

**1.** The District Court's decision conflicts with *Aleman Gonzalez* and mandatory Ninth Circuit authority interpreting § 1252(f)(1). *Aleman Gonzalez* did not hold that any government policy that has some effect on 8 U.S.C. §§ 1221–1232 is subject to § 1252(f)(1). Indeed, the majority explicitly disclaimed that view. Instead, a chain of Ninth Circuit cases, which hold that courts may enjoin policies that are

not grounded in 8 U.S.C. §§ 1221–1232, control this case. The District Court failed to apply those binding precedents and its opinion should, at the very least, be reversed to consider and apply them here.

     **2.**     Basic principles of statutory construction support the conclusion that § 1252(f)(1) has no application here. The plain text, structure, and history of § 1252(f)(1) all demonstrate that the statute only applies to injunctions that seek to enjoin or restrain the implementation or enforcement of a specified portion of the INA: 8 U.S.C. §§ 1221–1232. If, as here, the class is not seeking to enjoin or restrain the implementation or enforcement of those provisions, § 1252(f)(1) does not apply.

     **3.**     The District Court's interpretation of § 1252(f)(1) also conflicts with multiple canons of statutory interpretation. Among other things, the District Court's decision reads the phrase "of Part IV" out of the statute by requiring only that agency guidance be related to 8 U.S.C. §§ 1221–1232 by implication. That interpretation would provide the Executive Branch near *carte blanche* to ignore its own asylum processing policies.

     **4.**     The District Court erred by finding that any class that seeks an injunction that has some effect on U.S. immigration law is subject to 8 U.S.C. § 1252(f)(1). Section 1252(f)(1) does not remove all equitable authority from district courts with respect to U.S. immigration law. Outside of § 1252(f)(1)'s plain text, district courts retain inherent equitable authority to issue classwide injunctions.

**5.** Even assuming that the District Court was correct that the injunction sought by Plaintiffs had some collateral effect on the operation § 1225, the District Court erred because § 1252(f)(1) still does not preclude an injunction here. The touchstone for the Supreme Court's analysis of the scope of § 1252(f)(1) is the "government's view" of the lawful implementation of a covered provision in 8 U.S.C. §§ 1221–1232. *Aleman Gonzalez*, 596 U.S. at 551. In this case, assuming that the government is correct the November 2021 binding guidance reflects the lawful implementation of 8 U.S.C. §§ 1221–1232, at most, all that Plaintiffs seek to compel through their *Accardi* claim is the government's compliance with its own view of the lawful implementation of those provisions.

## ARGUMENT

### I.    The District Court Erred by Misinterpreting 8 U.S.C. § 1252(f)(1).

This appeal focuses on 8 U.S.C. § 1252(f)(1), which reads:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter . . . other than with respect to the application of such provisions to an individual against whom proceedings under such part have been initiated.

8 U.S.C. § 1252(f)(1). Although the plain text of § 1252(f)(1) is limited to part IV of subchapter II of the INA (which is codified at 8 U.S.C. §§ 1221–1232), the District Court found that § 1252(f)(1) applied to binding guidance that makes no men-

tion of those statutory provisions, does not purport to be based upon them or to constitute an implementation of them, and at most has an attenuated, collateral effect on the provisions. The District Court's interpretation is inconsistent with recent Supreme Court guidance, binding Ninth Circuit authority, and multiple canons of statutory construction. The District Court's erroneous interpretation of § 1252(f)(1) should be reversed.

### A. The District Court's Statutory Interpretation is Inconsistent with *Aleman Gonzalez* and Binding Ninth Circuit Authority.

The District Court misinterpreted the only two cases it cited in support of its view of 8 U.S.C. § 1252(f)(1)—*Aleman Gonzalez*, 596 U.S. at 553 and *Al Otro Lado v. Mayorkas* ("*Al Otro Lado I*"), 619 F. Supp. 3d 1029 (S.D. Cal. 2022). In fact, *Aleman Gonzalez, Al Otro Lado I*, and binding Ninth Circuit authority that the District Court did not analyze, *Gonzalez v. ICE*, 975 F.3d 788 (9th Cir. 2020), all indicate that the District Court's overbroad interpretation of § 1252(f)(1) was in error.

*First,* despite extensively citing *Aleman Gonzalez*, the District Court failed to acknowledge footnote 4 of the opinion, which *expressly states* that the Supreme Court did not overturn, and presumably agrees with, the Ninth Circuit's holding that district courts may "enjoin the unlawful operation of a provision *that is not specified in § 1252(f)(1)* even if that injunction has some collateral effect on the operation of a covered provision" of the INA. *Aleman Gonzalez*, 596 U.S. at 553 n.4. Moreover, the Supreme Court in *Aleman Gonzalez* was clear that its opinion did not address "a

situation in which a non-immigration statute, or some immigration statute not specified in § 1252(f)(1), might require injunctive relief against the enforcement of one of the covered immigration provisions." *Id.* The District Court failed to address that language and extended *Aleman Gonzalez* well beyond its explicit terms and the plain language of 8 U.S.C. § 1252(f)(1).

*Second*, while the Supreme Court's interpretation of § 1252(f)(1) in *Aleman Gonzalez* may be a "dramatic reduction in" the district court's authority to enter classwide preliminary injunctions, *Immigrant Defenders Law Ctr. v. Mayorkas*, 2023 WL 3149243, at *12 (C.D. Cal. 2023), § 1252(f)(1) still does not "categorically insulate immigration enforcement from 'judicial classwide injunctions.'" *Gonzalez v. ICE*, 975 F.3d 788, 812 (9th Cir. 2020). In fact, the Supreme Court specifically did not overturn a long line of Ninth Circuit cases that hold that "by specifying only 'the provision of Part IV' and reinforcing its focus on only 'such provisions,'" § 1252(f)(1)'s "plain text makes clear that its limitations on injunctive relief do not apply to *other* provisions of the INA" or other statutes. *Gonzales v. DHS*, 508 F.3d 1227, 1233 (9th Cir. 2007) (affirming the district court's authority to enjoin unlawful application of 8 U.S.C. § 1255(i), under Part V of INA, even though it prohibited reinstatement of removal for class members which falls under Part IV, 8 U.S.C. § 1231(a)(5)); *see also Catholic Soc. Servs., Inc. v. INS*, 232 F.3d 1139, 1149–50 (9th Cir. 2000) (upholding injunction against adjustment of status policy issued under 8

24

U.S.C. § 1255(a) even though injunction prohibited removal of class members under a provision of chapter 4, which was a "downstream consequence" of rejection of adjustment applications). That line of cases, which the District Court did not cite or analyze in its ruling, applies with particular force here. If § 1252(f)(1) does not apply to other portions of the INA, it certainly does not apply to binding guidance that makes no mention of 8 U.S.C. §§ 1221–1232.

*Third*, the District Court said that it saw no "daylight" between the present case and *Al Otro Lado I*. 1-ER-28–29. However, the District Court failed to (a) note the many factual and legal distinctions between this case and *Al Otro Lado I* and (b) even acknowledge a separate opinion in *Al Otro Lado I* that illustrates the significant differences between this case and *Al Otro Lado I*. In *Al Otro Lado I*, a certified class of asylum seekers sought a permanent injunction requiring the government to inspect and process asylum seekers arriving at POEs, pursuant to 8 U.S.C. § 1225(a)(1), a section of the INA explicitly covered by 8 U.S.C. § 1252(f)(1). Although the plaintiffs in that case argued that the district court could side-step *Aleman Gonzalez* by anchoring a permanent injunction in 8 U.S.C. § 1158, which falls outside of the ambit of Section 1252(f)(1), the *Al Otro Lado I* court rejected that argument. *Id.* at 1046. It found that there was "practically no attenuation between § 1158 and . . . § 1225, the statute that Plaintiffs acknowledge § 1252(f)(1) prohibits this Court from influencing through injunctive relief." *Id.* at 1046. The *Al Otro Lado I* court reasoned that

this was so because 8 U.S.C. § 1158 and 8 U.S.C. § 1225 were "inextricably inter-twined." *Id.*

However, the same day, the *Al Otro Lado I* court issued a second and more relevant opinion applying *Aleman Gonzalez*, that the District Court here failed to address. In that opinion, the *Al Otro Lado I* court found that *Aleman Gonzalez* did not apply to a separate injunction under the All Writs Act because that injunction prohibited the government from applying an asylum eligibility rule to noncitizens whom the rule's plain language expressly excluded. *Al Otro Lado, Inc. v. Mayorkas*, 2022 WL 3142610, at *23 (S.D. Cal. 2022). The *Al Otro Lado I* court explained that its injunction had no effect on any portion of 8 U.S.C. §§ 1221–1232. *Id.* Therefore, the injunction addressed "the unlawful operation of a provision *that is not specified in § 1252(f)(1)* even if that injunction has some collateral effect on the operation of a covered provision." *Id.* Both *Aleman Gonzalez* and *Gonzales v. DHS* recognize district courts may enter such injunctions without running afoul of 8 U.S.C. § 1252(f)(1). *Id.; see also Aleman Gonzalez*, 596 U.S. at 553 n.4; *Gonzales*, 508 F.3d at 1233. The *Al Otro Lado I* court reasoned that 1252(f)(1) does not bar injunctions that prevent "the Government from taking actions not even authorized by the Asylum Ban, let alone any implementing regulation or statute" because they would not "interfere[] with the operation of 8 U.S.C. §§ 1221 through 1232." So too here; neither the District Court nor the government explains how enjoining CBP officers from

taking actions not authorized by the November 2021 memo—turning back asylum seekers—would interfere with the operation of 8 U.S.C. §§ 1221 through 1232.

Reading the two *Al Otro Lado I* opinions together, the principle becomes clear. Injunctions that require the government to take action or refrain from taking action to enforce or implement a covered provision of the INA are prohibited. *Al Otro Lado I*, 691 F. Supp. 3d. at 1046. However, courts may still issue classwide injunctions that address the unlawful operation of a provision not specified in 8 U.S.C. § 1252(f)(1)—or, in this case, a binding policy grounded in other provisions of law—even if that classwide injunction has some collateral effect on a provision covered by Section 1252(f)(1). *Al Otro Lado*, 2022 WL 3142610, at *23.

That distinction, which the District Court glossed over, applies here with considerable force. In this case, Plaintiffs are not seeking to enjoin or restrain *anything* in the INA, much less the provisions covered by 8 U.S.C. § 1252(f)(1). Instead, Plaintiffs seek an injunction requiring the government to follow its own binding policy about whether and when asylum seekers are required to use a certain piece of technology (the CBP One app) at the border—a binding policy that does not mention the INA at all. 2-ER-254–59; *infra* 29–31; *see Accardi*, 347 U.S. at 268; *Church of Scientology of Cal. v. United States*, 920 F.2d 1481, 1487 (9th Cir. 1990) ("Pursuant to the *Accardi* doctrine, an administrative agency is required to adhere to its own internal operating procedures."). While an injunction requiring Defendants to follow

27

that binding policy might have some downstream effects on a provision of the INA covered by 8 U.S.C. § 1252(f)(1), both the Supreme Court and Ninth Circuit recognize that such collateral effects are not sufficient to trigger Section 1252(f)(1). *See Aleman Gonzalez*, 596 U.S. at 553 n.4; *Gonzalez*, 508 F.3d at 1227.

The injunction Plaintiffs seek here—to require CBP officers to follow their own building guidance regarding use or non-use of the CBP One app—does not seek to remedy injuries that are caused by, related to, or "inextricably intertwined with" a covered provision of the INA. At most, it has the sort of collateral effect on asylum processing that *Aleman Gonzalez* and Section 1252(f)(1) tolerate. *Aleman Gonzalez*, 596 U.S. at 553 n.4; *Gonzalez*, 508 F.3d at 1227. Thus, the District Court erred in its analysis of *Aleman Gonzalez* and *Al Otro Lado I*.

**B.    The District Court's Broad Standard Ignores the Plain Text, Structure, and History of 8 U.S.C. § 1252(f)(1).**

The District Court committed a clear and reversible legal error by ignoring the plain text, structure, and legislative history of 8 U.S.C. § 1252(f)(1). All of those methods of statutory interpretation tell one story: Section 1252(f)(1) is limited to the statutory provisions it references. Thus, the reach of Section 1252(f)(1) is not unlimited. District courts retain their inherent equitable powers for all matters that are not covered by the text of Section 1252(f)(1).

**1.    Plain text.** "Statutory interpretation . . . begins with the text" of the statute itself. *Ross v. Blake*, 578 U.S. 632, 638 (2016). A court "must interpret the

statute as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." *Rodriguez v. Sony Computer Ent. Am., LLC*, 801 F.3d 1045, 1051 (9th Cir. 2015). "[U]nless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *The Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 1060 (9th Cir. 2003).

"By its plain terms, and even by its title, [§ 1252(f)(1)] is nothing more or less than a limit on injunctive relief. It prohibits courts from granting classwide injunctive relief against the operation of [8 U.S.C.] §§ 1221–1232, but specifies that this ban does not extend to individual cases." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481–82 (1999); *see also Jennings v. Rodriguez*, 138 S. Ct. 830, 851 (2018) (similar).

The phrase that is at issue here is "the operation of the provisions of part IV of this subchapter." 8 U.S.C. § 1252(f)(1). As the Supreme Court explained in *Aleman Gonzalez*, the phrase "operation of" "means the functioning of or working of" the object of the sentence. 596 U.S. at 549. The object of that sentence is a set of statutes, 8 U.S.C. §§ 1221–1232, that "charge the Federal Government with the implementation and enforcement of immigration laws governing the inspection, apprehension, examination, and removal of [noncitizens]." *Id.* at 549–50. Thus,

§ 1252(f)(1) "is best understood to refer to the Government's efforts to enforce or implement" the "relevant statutes." *Id.* at 550.

Importantly, Part IV of Subchapter II of the Immigration and Nationality Act is not the sole source of the federal government's authority to create policies concerning noncitizens seeking asylum at POEs on the U.S.-Mexico border. The government "has broad, undoubted power over the subject of immigration and the status of [noncitizens]." *Arizona v. United States*, 567 U.S. 387, 394 (2012). Some of that power derives from Congress's constitutional power to "establish a uniform Rule of Naturalization." U.S. Const., art. I, § 8, cl. 4. Other power derives from the Homeland Security Act, which describes various statutory duties that Defendants must carry out, including the duty to "conduct inspections at such ports of entry." *See* 6 U.S.C. §§ 111, 211(c), 211(g)(3). Moreover, the Immigration and Nationality Act is broader than Part IV of Subchapter II. *See Florida v. United States*, 2022 WL 2431414, at *11 (N.D. Fla. 2022) ("[E]ven if § 1252(f)(1) was somehow applicable to the claims in this case, it would not preclude an order restraining or enjoining [another portion of the INA] since that statute is in a different part [of the INA]."). For that reason, this Court has repeatedly and correctly held that district courts may enter orders enjoining the operation of other sections of the INA or other immigration policies. *See, e.g.*, *Catholic Soc. Servs. v. INS*, 232 F.3d 1139, 1150 (9th Cir. 2000) (en banc) (upholding preliminary injunction issued under a part of the INA

30

not covered by 8 U.S.C. § 1252(f)(1)); *Gonzales v. DHS*, 508 F.3d 1227, 1233 (9th Cir. 2007) (same).

Here, Plaintiffs sought a classwide injunction requiring Defendants to follow binding internal guidance. That guidance did not reference the provisions of the INA covered by 8 U.S.C. § 1252(f)(1) at all. There is no evidence in the record indicating that Defendants nevertheless intended for that guidance to implement Part IV of Subchapter II of the INA. *Cf. Ammex, Inc. v. McDowell*, 24 F.4th 1072, 1080 (6th Cir. 2022) (courts may not look beyond the plain text of agency pronouncements unless the pronouncement is "genuinely ambiguous"); *Safe Air for Everyone*, 488 F.3d at 1097 (generally, courts credit the plain meaning of agency pronouncements). At most, the November 2021 memorandum describes procedures for the management and processing of undocumented noncitizens as well as whether and when an individual must use the CBP One smart phone app. The binding guidance implicates multiple portions of the INA outside of the reach of § 1252(f)(1), *see* 8 U.S.C. § 1158(a), and certain provisions of the Homeland Security Act, *see* 6 U.S.C. §§ 111, 211(c), 211(g)(3). Importantly, the only legal authority that is referenced in the text of the memorandum is an executive order. *See* 2-ER-259. In turn, that executive order makes general reference to the entirety of the INA and the powers "vested in . . . [the] President by the Constitution and laws of the United States." Exec. Order 14010, 86 Fed. Reg. 8267, 8267 (Feb. 2, 2021).

Defendants' choice to ground the November 2021 memorandum in an executive order that makes no reference to the INA provisions covered by § 1252(f)(1) is significant. Defendants are presumably familiar with the scope of immigration law. However, even after *Aleman Gonzalez*, Defendants did not amend the November 2021 guidance to clarify that it was based on provisions of the INA covered by § 1252(f)(1).

Defendants' choices are deliberate and dispositive. The November 2021 memorandum falls outside of the scope of Section 1252(f)(1) because defendants chose to implement an executive order in the memorandum rather than a covered section of the INA. *See E. Bay Sanctuary Covenant*, 2023 WL 4729278, at *8 (statute that cross-referenced a provision covered by Section 1252(f)(1) was outside the scope of Section 1252(f)(1)); *Al Otro Lado, Inc. v. Mayorkas*, 2022 WL 3142610, at *23 (S.D. Cal. 2022) (injunction related to 8 U.S.C. § 1158 was "one step removed" from the provisions covered by Section 1252(f)(1) and therefore not subject to Section 1252(f)(1)).

Plaintiffs' *Accardi* claim—the only claim on appeal—seeks to hold the government accountable to its own binding guidance, not its statutory duties under any part of the INA, let alone Part IV. The *Accardi* doctrine "extends beyond formal regulations" and statutory duties. *See Alcaraz v. INS*, 384 F.3d 1150, 1162 (9th Cir. 2004) (citing *Church of Scientology of Cal. v. United States*, 920 F.2d 1481, 1487

(9th Cir. 1990)). For example, an "agency is required to adhere to its own internal operating procedures" above and beyond its statutory duties and regardless of what those procedures entail (as long as those procedures are lawful). *See Church of Scientology*, 920 F.2d at 1487. "This is so even where the internal procedures are possibly more rigorous than otherwise would be required." *Morton v. Ruiz*, 415 U.S. 199, 235 (1974).

2. **Statutory Structure.** The structure of 8 U.S.C. § 1252 supports the same conclusion. Section 1252(f)(1) was "enacted as part of a unified overhaul of judicial review procedures" in removal proceedings known as the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996. *Nken v. Holder*, 556 U.S. 418, 430-31 (2009); *see also* Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546, 3009 (1996). As a part of that overhaul, Congress created new expedited removal procedures. *See* 8 U.S.C. § 1225(b)(1)(A)(i). Under IIRIRA, CBP officers are permitted to remove categories of arriving noncitizens without valid travel documents "without further hearing or review," unless that noncitizen "indicates either an intention to apply for asylum . . . or a fear of persecution," in which case the noncitizen must be referred to an asylum officer for an interview to determine whether the noncitizen has a credible fear of persecution. *Id.*; 8 U.S.C. § 1225(b)(1)(A)(ii); § 1225(b)(1)(B).

At the same time, Congress limited the role of district courts and courts of appeal in hearing certain types of challenges. For example, 8 U.S.C. § 1252(e)(1) limits the ability of any court to "enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude a[] [noncitizen] in accordance with" the new expedited removal statute unless such a challenge was otherwise authorized by the INA. Section 1252(e)(3) states that challenges to the expedited removal system must be brought in the U.S. District Court for the District of Columbia no later than 60 days after a statute, regulation, directive, guideline, or procedure is first implemented. *Id.* § 1252(e)(3).

The clear implication of these statutory limits is that where Congress intended to strip courts of certain remedial or jurisdictional authority in the INA, "it did so unambiguously." *Biden v. Texas*, 142 S. Ct. 2528, 2539 (2022). However, unlike other portions of 8 U.S.C. § 1252 that contain broader limitations on judicial review of removal orders, § 1252(f)(1) only prohibits district courts and courts of appeals from entering classwide injunctions that enjoin or restrain the operation of 8 U.S.C. §§ 1221–1232, which include the expedited removal procedures enacted in 1996. 8 U.S.C. § 1252(f)(1). Congress could have spoken more broadly when adopting § 1252(f)(1). *Texas*, 142 S. Ct. at 2539–40. If Congress had intended to strip courts of equitable jurisdiction in all cases relating to asylum proceedings, it clearly knew how to do so. Instead, Congress focused on a specific kind of remedy and targeted a

specific set of statutory provisions. Therefore, 8 U.S.C. § 1252(f)(1) should not be interpreted to extend beyond injunctions that require the government to take or refrain from taking action to implement or enforce 8 U.S.C. §§ 1221–1232.

**3.    Legislative History.** The legislative history of 8 U.S.C. § 1252(f)(1) likewise supports the conclusion that Congress merely sought to limit injunctive relief restraining government efforts to enforce or implement 8 U.S.C. §§ 1221–1232. *See Wooden v. United States*, 595 U.S. 360, 373 (2022) (relying on legislative history to interpret amendment to Armed Career Criminal Act). As the legislative history makes clear, § 1252(f)(1) "limits the authority of Federal courts other than the Supreme Court to enjoin the operation of the new removal procedures established *in this legislation*." H.R. Rep. No. 104-469, pt. 1, at 161 (1996) (emphasis added). Here, Defendants provided no evidence that any portion of the November 2021 memorandum dealt with the removal procedures described in 8 U.S.C. §§ 1221–1232. Therefore, § 1252(f)(1) does not apply to an injunction requiring Defendants to comply with the binding guidance.

**C.    The District Court's Misinterpretation of Section 1252(f)(1) to Encompass All Conduct Related to Immigration Enforcement Violates Multiple Canons of Statutory Construction.**

Although the plain text, structure, and legislative history of Section 1252(f)(1) all indicate that it does not apply to agency guidance that is not based on any of the covered provisions of Section 1252(f)(1), the District Court erroneously construed

Section 1252(f)(1) to effectively apply to all conduct related to immigration enforcement. That decision is inconsistent with several canons of statutory interpretation.

*First*, the District Court ignored "one of the first canons of construction," which "teaches [courts] to avoid if possible [a result] which is at war with the common sense." *United States v. Howell*, 78 U.S. 432, 436 (1870). *See also Roschen v. Ward*, 279 U.S. 337, 339 (1929) ("[T]here is no canon against using common sense in construing laws as saying what they obviously mean."). If the District Court's overly expansive interpretation of 8 U.S.C. § 1252(f)(1) were accurate, it would lead to perverse results. Under the District Court's view, if the executive branch were to issue a directive without any reference to the INA that white asylum seekers in line at POEs should be prioritized over non-white asylum seekers, district courts and courts of appeal would be powerless to enjoin the policy on a classwide basis. It cannot be that Congress intended to strip district courts and courts of appeal of all their equitable powers to remedy plainly illegal executive conduct that makes no reference to the INA simply because it has some tangential effect on inspecting asylum seekers at the border. Courts should be particularly skeptical of interpreting a statute to give the executive "virtually unlimited power to rewrite" broad areas of national policy and "effec[t] a fundamental revision of the statute, changing it from [one sort of] scheme of . . . regulation into an entirely different kind." *Biden v. Nebraska*, 143 S. Ct. 2355, 2373 (2023).

36

*Second*, the District Court's interpretation renders the reference to 8 U.S.C. §§ 1221–1232 in the statute mere surplusage, a result that courts routinely reject. *See, e.g.*, *Ariz. All. for Cmty. Health Ctrs. v. Ariz. Health Care Cost Containment Sys.*, 47 F.4th 992, 999 (9th Cir. 2022) (courts must "mak[e] every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous"); *United States v. Neal*, 776 F.3d 645, 652 (9th Cir. 2015) (same). The remedy stripping language in 8 U.S.C. § 1252(f)(1) is limited to "the operation of the provisions of [8 U.S.C. §§ 1221–1232]." Reading § 1252(f)(1) so broadly that it applies to any aspect of immigration policy that has "downstream consequences" on inspection, processing, detention, or removal of noncitizens at the border under 8 U.S.C. §§ 1221–1232 would render meaningless the reference to specific sections of the INA. Thus, that overbroad interpretation of § 1252(f)(1) violates the Supreme Court's repeated guidance that courts "must give effect to every word that Congress used in the statute." *Lowe v. SEC*, 472 U.S. 181, 207 n. 53 (1985).

*Third*, the doctrine of *expressio unius est exclusio alterius* "creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions." *Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 885 (9th Cir. 2005). This "common syntactical implication" applies "when it makes sense as a matter of legislative purpose." *Longview Fibre Co.*

*v. Rasmussen*, 980 F.2d 1307, 1313 (9th Cir. 1992); *see also Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013) (doctrine applies only if "it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it"). The legislative history and structure of 8 U.S.C. § 1252(f)(1) support the conclusion that Congress' decision to exclude other INA provisions and other immigration-related laws from the scope of 8 U.S.C. § 1252(f)(1) was intentional. Congress limited § 1252(f)(1) to injunctions enjoining or restraining the operation of certain new procedures enacted by IIRIRA. *See supra* Section I.B.2. Because Congress was concerned only with those provisions, its exclusion of the remainder of the INA and other immigration laws has meaning.

Here, Plaintiffs have a right to require that the government follow its own binding guidance. *Accardi*, 347 U.S. at 265–66; *Alcaraz*, 384 F.3d at 1162 ("agencies may be required to abide by certain internal policies."); *Battle v. FAA*, 393 F.3d 1330, 1336 (D.C. Cir. 2005) ("agencies may not violate their own rules and regulations to the prejudice of others."). The District Court misinterpreted 8 U.S.C. § 1252(f)(1) to give the executive branch practically unfettered authority to violate its own policy and to deprive asylum seekers of the ability to obtain systemic equitable relief for such misconduct.

### D. The District Court Erred by Finding a Clear Legislative Command Stripping Injunctive Relief Beyond the Scope of 8 U.S.C. § 1252(f)(1).

The District Court found that it lacked equitable jurisdiction to issue the injunction that the Plaintiffs sought, even though Plaintiffs' *Accardi* claim is beyond the scope of Section 1252(f)(1). In doing so, the District Court created an improper limit on its broad equitable jurisdiction without a clear legislative command to do so.

Federal courts possess broad authority to grant equitable relief—including classwide injunctions. *See, e.g.*, *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946) ("Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied."); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982) (same).

"The comprehensiveness of" a district court's equitable authority "is not to be denied or limited in the absence of a clear and valid legislative command." *Weinberger*, 456 U.S. at 313; *United States v. Coca-Cola Bottling Co. of Los Angeles*, 575 F.2d 222, 230 (9th Cir. 1978) ("[T]he Supreme Court . . . has precluded us from implying, where not explicit, a statutory restriction on the district court's inherent equity jurisdiction."). Indeed, courts should not come to the conclusion that their equitable powers are limited by statute lightly. *See Brown v. Swann*, 35 U.S. 497,

503 (1836) ("The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction."); *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960) (courts must interpret statutes that reference a court's equitable power "cognizant of the historic power of equity to provide complete relief"). In fact, courts possess their equitable powers "[a]bsent the clearest command to the contrary from Congress." *Califano v. Yamasaki*, 442 U.S. 682, 705 (1979); *see also FTC v. Dean Foods Co.*, 384 U.S. 597, 608 (1966) (courts retain equitable authority "[i]n the absence of explicit direction from Congress").

Congress knows how to issue broad limitations on equitable powers that are clear and explicit. For example, in the Anti-Injunction Act, 28 U.S.C. § 2283, Congress explicitly stated that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress." Likewise, the Tax Injunction Act, 28 U.S.C. § 1341, states, "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

In contrast, 8 U.S.C. § 1252(f)(1) does not use such sweeping language. It is limited to classwide injunctions that enjoin or restrain the government from implementing or carrying out specific statutory provisions (8 U.S.C. §§ 1221–1232). Those differences are not an accident. When Congress uses different language in

40

statutes that have the same goal (here, stripping equitable powers from federal courts), "differences in language . . . convey differences in meaning." *Wisc. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2071 (2018). Simply put, Congress knows how to write statutes that broadly claw back federal courts' equitable powers. It did not do so here.

In this case, no clear legislative command stripped the District Court's authority to enter a classwide injunction enjoining the operation of statutes or policies other than 8 U.S.C. §§ 1221–1232. Thus, the District Court's conclusion that § 1252(f)(1) precluded it from granting classwide equitable relief on Plaintiffs' *Accardi* claim was fundamentally flawed.

Such an interpretation of § 1252(f)(1) and *Aleman Gonzalez* would require courts to relinquish equitable authority any time the government claims post-hoc that a certain policy is related to a covered provision of the INA, even if the government had never previously rooted the policy in a covered provision. But "[i]t is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983). Courts do not "accept appellate counsel's post-hoc rationalizations for agency action." *Nat. Res. Def. Council v. EPA*, 857 F.3d 1030, 1040 (9th Cir. 2017) (quoting *Hernandez-Cruz v. Holder*, 651 F.3d 1094, 1109 (9th Cir. 2011)); *see also Kisor*, 139 S. Ct. at 2417 ("[A] court should decline to

defer to a merely convenient litigating position or *post hoc* rationalization advanced to defend past agency action against attack.") (internal quotations omitted); *Nat. Res. Def. Council v. U.S. Env't Prot. Agency*, 31 F.4th 1203, 1206–07 (9th Cir. 2022). "The rule barring consideration of post hoc agency rationalizations operates where an agency has provided a particular justification for a determination at the time the determination is made, but provides a different justification for that same determination when it is later reviewed by another body." *Independence Min. Co. v. Babbitt*, 105 F.3d 502, 511 (9th Cir. 1997) (citations omitted); *see also Ctr. for Cmty. Action & Env't Just. v. FAA*, 61 F.4th 633, 650 (9th Cir. 2023).

Allowing the government to claim post-hoc that a particular policy is rooted in one of the covered provisions of the INA would violate longstanding principles that counsel courts to tread lightly when determining the scope of limits to equitable authority. *See, e.g.*, *Weinberger* 456 U.S. at 313 ("[W]e do not lightly assume that Congress has intended to depart from established principles."). Thus, the District Court erred by finding a limit on its equitable authority without a clear legislative command to do so.

### E. The District Court Erred in Adopting an Overly Broad Definition of "Enjoin or Restrain."

Even if the District Court correctly concluded that the government's policy implicated a covered provision of the INA (which Plaintiffs do not accept), the District Court incorrectly interpreted *Aleman Gonzalez* to bar classwide injunctive relief

42

in *any case* that touches upon a covered provision of the INA, regardless of the injunction's purpose. That is not what *Aleman Gonzalez* holds. *Aleman Gonzalez* explains that "[t]he object of the verbs 'enjoin or restrain' is the 'operation of' certain provisions of federal immigration law" "through the actions of officials or other persons who implement them." 596 U.S. at 549.

Under *Aleman Gonzalez*, a court exceeds its authority only when ordering the government to take or refrain from taking action contrary to what is "in the Government's view" the lawful implementation of the covered sections of the INA under § 1252(f)(1). Such orders "'enjoin or restrain the operation' of §1231(a)(6) because they require officials to take actions that (in the government's view) are not required by §1231(a)(6) and to refrain from actions that (again in the government's view) are allowed by §1231(a)(6)." *Id.* at 551. If the injunctive relief merely requires the government to take actions that it concedes are consistent with one or more covered provisions, then it cannot "enjoin or restrain" the government's operation of those provisions under *Aleman Gonzalez*.

The Supreme Court went out of its way to focus on the "government's view" to avoid having the § 1252(f)(1) analysis turn on a merits determination of the government's "proper implementation" of the relevant law. The Court expressed concerns that under a "proper implementation" standard, a court could grant a preliminary injunction and then find later during the merits stage that the government's view

of the law was correct, at which point the court would have lacked jurisdiction under § 1252(f)(1) to grant the injunction in the first place. *Id.* at 551. There is no risk of that here.

In *Aleman Gonzalez*, the plaintiffs argued that noncitizens detained under § 1231(a)(6) were entitled to bond hearings after six months' detention. *Id.* at 547. The government disagreed. *Id.* at 547–48. The district court ruled in the plaintiffs' favor and enjoined the government from detaining noncitizens under §1231(a)(6) for more than 180 days without a bond hearing. *Id.* The Supreme Court reversed the district court's injunction because it would have "require[d] officials to take actions" that "in the Government's view" are not required by the statute and "to refrain from actions" that "in the Government's view" are allowed by the statute. *Id.* at 551.

By contrast, Plaintiffs here do not seek to require the government to do anything that contravenes its view of the lawful implementation of the INA. Unlike in *Aleman Gonzalez*, the legal merits of the government's interpretation of the INA was not at issue in Plaintiffs' Motion for Preliminary Injunction. That is because Plaintiffs' desired injunctive relief is not predicated on the "proper" implementation of the law, but rather on the government's binding guidance regarding use of the CBP One app and the government's divergence from that policy.

Presumably, the government considers its binding guidance to be consistent with its obligations under the covered provisions of § 1252(f)(1). Thus, the present

case is distinguishable from the hypotheticals in *Aleman Gonzalez*, which are premised on claims that "the Government was misinterpreting and misapplying a covered statutory provision." 596 U.S. at 554. Indeed, the government conceded that Plaintiffs' requested injunction would do nothing more than "order CBP to comply with CBP's policy documents as written while they remain in effect." 2-ER-91. The government's own characterization of the order makes it difficult to imagine how such an order could "enjoin or restrain" the government's operation of a covered provision, especially considering that the government could nullify the injunction altogether by adopting a new policy consistent with its interpretation of the law.

## II. The Court Should Reverse the District Court's Order and Direct the District Court to Provisionally Certify the Class and Enter the Preliminary Injunction.

Once the District Court's erroneous interpretation of 8 U.S.C. § 1252(f)(1) is reversed, there is no reason to delay in issuing a classwide preliminary injunction because Plaintiffs have established all of the necessary elements.

***Likelihood of success on the merits.*** There is no genuine dispute that Plaintiffs are likely to succeed on the merits of their *Accardi* claim. There is no dispute that Defendants adopted a binding internal policy prohibiting CBP officers from turning back or redirecting arriving noncitizens at POEs who lack CBP One appointments. *See supra* Statement of the Case Section C. At most, Defendants contest whether CBP officers have actually turned away noncitizens. *Supra* Statement of the

45

Case Section D. But Plaintiffs have built an undisputed record of first-hand testimony and audio recordings showing that CBP officers did turn back arriving noncitizens who did not have CBP One appointments. *Id.*

While Defendants claim that the class representatives' claims are somehow moot because they subsequently received CBP One appointments and were inspected and processed, that argument makes little sense. Notably, each of Defendants' deviations from their stated policy harmed the class representatives by depriving them of the opportunity to access the asylum process and subjecting them to "the human suffering of . . . enduring squalid and dangerous conditions in Mexican border communities." *Al Otro Lado I*, 619 F. Supp. 3d at 1033–34. The mere fact that the class representatives received relief from those conditions at a later date does not change the suffering they endured as a result of Defendants' failure to follow their own binding guidance.

In any event, a claim in the pre-class certification context is not moot under the "inherently transitory" exception to mootness if (1) "the duration of the challenged action is too short to allow full litigation before it ceases," and (2) "it is certain that other persons similarly situated will have the same complaint." *Belgau v. Inslee*, 975 F.3d 940, 949 (9th Cir. 2020) (cleaned up), *cert. denied*, 141 S. Ct. 2795 (2021). Plaintiffs satisfy both conditions. First, they challenge Defendants' refusal to process asylum seekers who present at POEs without CBP One appointments,

which is too short, even for those who have had to wait months for an appointment. *Id.* at 949 (finding one-year period too short). Second, other similarly situated individuals awaiting CBP One appointments already "have the same complaint," along with many others who will present at POEs without appointments in the future. *Id.*

 ***Irreparable harm.*** The record is similarly uncontested with respect to irreparable harm. Plaintiffs submitted extensive evidence showing that when CBP officers turn back noncitizens, those noncitizens are at risk of kidnapping, rape, assault, and death. *See supra* Statement of the Case Section F. Importantly, Mexican asylum seekers are forced to remain in the country, and sometimes the very towns, in which they fear persecution. *Id.* This threat of harm constitutes irreparable injury. *See Al Otro Lado I*, 619 F. Supp. 3d at 1040–41. Defendants' only rejoinder is that they are attempting to process noncitizens without CBP One appointments and will eventually get to those living under life-threatening conditions. However, the mere fact that irreparable harm may end at some unspecified future date does not make it any less irreparable. *See Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (irreparable harm only requires a showing of "harm for which there is no adequate legal remedy, such as an award of damages."); *Doe v. Wolf*, 432 F. Supp. 3d 1200, 1212–13 (S.D. Cal. 2020) ("[I]t is enough to find that injunctive relief will prevent additional suffering, persecution and torture."). Indeed, kidnapping, rape, assault, and death are types of harm that are "beyond remediation." *Huisha-Huisha*

47

*v. Mayorkas*, 560 F. Supp. 3d 146, 172 (D.D.C. 2021), *aff'd and remanded*, 27 F.4th 718 (D.C. Cir. 2022).

**Balance of equities and public interest.** The balance of equities and public interest merge where, as here, the government is a party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). The public interest and balance of the equities would be served by the government's compliance with its own binding guidance. *See E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018). Indeed, Defendants claim that they are trying to comply with the guidance, so requiring them to do so "can pose no harm." *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 156 (D.D.C. 2018).

**Provisional class certification.** There is also no reason why the provisional class, consisting of all noncitizens who seek or will seek to present themselves at a POE to seek asylum, and were or will be prevented from accessing the U.S. asylum process by or at the direction of Defendants on or after May 12, 2023, should not be certified on remand. District courts have held that substantially similar classes easily satisfy the requirements of Rules 23(a) and 23(b)(2). *See, e.g.*, *Al Otro Lado, Inc. v. Wolf*, 336 F.R.D. 494, 506–07 (S.D. Cal. 2020); *Al Otro Lado, Inc. v. McAleenan*, 423 F. Supp. 3d 848, 869–74 (S.D. Cal. 2019). The proposed class includes hundreds, if not thousands, of noncitizens—making joinder impractical. 2-ER-161–75 (showing that multiple POEs are not processing asylum seekers without CBP One

appointments, leading to hundreds of turnbacks). The lawsuit also challenges the legality of a system-wide practice, which courts have repeatedly found to satisfy the commonality test. *Al Otro Lado*, 336 F.R.D. at 502–03. In addition, the class representatives' claims are typical of the remainder of the class, because all the class representatives were turned back by or at the direction of CBP officers. *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (noting that typicality "is permissive"). Adequacy is met because there are no conflicts of interest within the proposed class and the plaintiffs are represented by qualified counsel. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); *see also* 4-ER-666–73 (describing qualifications of class counsel). Finally, because Plaintiffs seek injunctive relief that can be granted in one fell swoop, FED. R. CIV. P. 23(b)(2) is satisfied. *Al Otro Lado*, 336 F.R.D. at 506–07.

Therefore, once this Court reverses the District Court's erroneous interpretation of 8 U.S.C. § 1252(f)(1), it should direct the District Court to provisionally certify the class and issue the preliminary injunction sought by Plaintiffs.

## CONCLUSION

The District Court committed a fundamental statutory construction error. It sought to "indulge efforts to endow the Executive Branch with maximum bureaucratic flexibility" at the expense of "the law's ordinary meaning." *Niz-Chavez v.*

*Garland*, 141 S. Ct. 1474, 1484 (2021). It is "only the words on the page [that] constitute the law adopted by Congress and approved by the President." *Bostock v. Clayton County*, 140 S. Ct. 1731, 1738 (2020). Here, Congress limited the plain language of 8 U.S.C. § 1252(f)(1) to injunctions restraining or enjoining the operation of specific provisions of the INA that are not at issue. Section 1252(f)(1) is not an unlimited ban on any injunction that may, by some daisy-chain of logic, have some effect on those covered provisions. *Aleman Gonzalez*, 596 U.S. at 553 n.4. The District Court was not at liberty to "add to, remodel, update, or detract" from § 1252(f)(1), *Bostock*, 140 S. Ct. at 1738, but it did just that.

This Court should reverse the District Court's erroneous interpretation of § 1252(f)(1). After reversing that ruling, it should direct the District Court to provisionally certify the class and issue the preliminary injunction sought by Plaintiffs.

Dated: December 5, 2023

Respectfully submitted,

*/s/ Stephen M. Medlock*

Melissa Crow
CENTER FOR GENDER & REFUGEE STUDIES
1121 14th Street, N.W., Suite 200
Washington, DC 20005
(202) 355-4471

Stephen M. Medlock
Evan Miller
Rami Abdallah E. Rashmawi
Alex Rant
Nataly Farag
VINSON & ELKINS LLP
2200 Pennsylvania Ave., N.W.
Suite 500 West
Washington, DC 20037
(202) 639-6500

Neela Chakravartula
Dulce Rodas
CENTER FOR GENDER & REFUGEE STUDIES
200 McAllister Street
San Francisco, CA 94102
(415) 565-4877

Ori Lev
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006
(202) 263-3270

Baher Azmy
Angelo Guisado
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
(212) 614-6464

Matthew H. Marmolejo
MAYER BROWN LLP
333 S. Grand Ave., 47th Floor
Los Angeles, CA 90071
(213) 229-9500

Katherine Melloy Goettel
Gianna Borroto
Suchita Mathur
AMERICAN IMMIGRATION COUNCIL
1331 G St. N.W., Suite 200
Washington, DC 20005
(202) 507-7552

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that:

1. The motion is proportionally spaced, has a typeface of 14 point or more, and contains 11,971 words, exclusive of the exempted portions of the brief.

2. The brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32, the undersigned has relied on the word-count feature of this word-processing system in preparing this certificate.

Dated: December 5, 2023

Respectfully submitted,

*/s/ Stephen M. Medlock*
Stephen M. Medlock
VINSON & ELKINS LLP
2200 Pennsylvania Ave., N.W.
Suite 500 West
Washington, DC 20036
(202) 639-6500

# ADDENDUM

# STATUTORY AUTHORITY

### § 1252. Judicial review of orders of removal

\* \* \*

### (f) Limit on injunctive relief
#### (1) In general

Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

8 U.S.C. § 1252(f)(1).